LOLLEY, J.
 

 BThe appellant, Peter Marshall/Unknown Father, appeals the judgment of the Juvenile Court for the Twenty-Sixth Judicial District, Parish of Bossier, State of Louisiana, which overruled his motion to dismiss the petition. For the following reasons, we affirm the trial court’s judgment.
 

 
 *1034
 
 Facts
 

 On November 10, 2009, the Department of Social Services, Office of Community Services, Parish of Bossier, received a report of abuse and/or neglect and/or lack of supervision concerning the minor children of Felicia Burks, C.B. and T.B. At the time, the children were 7 years old and 6 years old, respectively. The child protection investigator had received a report of physical abuse of the children, based on a scratch on C.B.’s face.
 

 When the investigator interviewed Burks, she claimed that she accidentally scratched C.B. when she tried to pick her up off the floor while she was playing. At the interview, although Burks stated that she did not drink every day, the investigator observed her to be heavily intoxicated and not able to understand their conversation. There was insect poison all over the house, which she claimed was to remedy a roach infestation. When the investigator interviewed C.B., the child stated that Burks had scratched her on her face while they were fighting and then told her to say that one of the other kids at school had scratched her. The investigator observed a long, red scratch across the left side of the child’s face. C.B. also stated that Burks is always mean to her and that she is always drunk. When the investigator interviewed T.B., he stated that Burks scratched C.B. on her face because she was mad at her and that Burks was always drunk. When 12the investigator interviewed Sandra Burks, Burks’ cousin, she stated that the children did not need to be in the home with Burks and that she was willing to take care of the children until Burks got herself together. Agency records contained an extensive history concerning Burks and her other four children, including reports of physical abuse, ne-glectdack of supervision, and medical neglect.
 

 As a result of the investigation, C.B. and T.B. were taken into custody by the State of Louisiana, due to the physical abuse as shown by the obvious scratch marks, Burks’ dependency/alcoholism, and inadequate shelter. The children were temporarily placed with Sandra Burks. The case involving C.B. was dismissed, because the petition against her father, Bobby Kennon, was dismissed, and he now has custody of her.
 

 After a hearing, T.B. was adjudicated in need of care against Burks on January 4, 2010. Burks stated that to the best of her knowledge Peter Marshall (referred to herein as “Marshall” or “unknown father”) was the father of the child T.B.; however, Marshall’s court-appointed attorney could not locate him and has represented him at all of the hearings. At Marshall’s adjudication hearing, he moved to dismiss the petition for a lack of allegations of neglect or abuse against him. This objection was overruled by the trial court. The only evidence presented to the trial court was a stipulation that if the social worker on the case was called to testify, she would testify consistent with the allegations in the petition. Ultimately, |ST.B. was adjudicated in need of care as to Marshall. At the disposition hearing, the custody of T.B. was ordered to be continued by the State, and this appeal by Marshall ensued.
 

 Discussion
 

 On appeal, Marshall argues that there are no allegations in the petition that allege any neglect or abuse against him, and whereas the State was granted leave to amend its petition, it never did so. Marshall moved to dismiss the petition against him (through his court-appointed attorney, because Marshall was never located), and the State conceded that there were no allegations against either father. The trial court did not dismiss the petition against
 
 *1035
 
 Marshall, the alleged father of T.B., based on the best interest of the child.
 

 The State argues that Marshall has had nothing to do with the child and the fact that he cannot be found is sufficient for a finding of neglect. It also points out that Marshall stipulated that the Agency investigator would testify consistent with the allegations in the petition, which would include that the father (i.e., Marshall) is unknown and that the father has had no contact with the child. The State also contends that it has proven the allegations of neglect against Marshall by a preponderance of the evidence by showing his lack of interest and involvement in the child’s life, which constitutes
 
 de facto
 
 neglect. The State maintains that the trial court carefully considered the evidence and were justified in overruling Marshall’s motion to dismiss the petition. Also, since the circumstances show that the decision of the trial court was in the best interest of the child T.B., great |4deference should be afforded to it in this ruling, and the judgment should be affirmed. We agree.
 

 Here, the primary basis for the proceedings against the mother was the neglect of the child. Louisiana Ch. C. art. 603 defines neglect as “the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, ... as a result of which the child’s physical, mental, or emotional health and safety is substantially threatened or impaired.” Although there were no explicit allegations against Marshall, it is affirmatively alleged in the petition that the father of T.B. was unknown. It is also clear that the unknown father has never provided financial support for this child, protected this child from the abuse and neglect by the mother, seen to the educational needs of this child, or cared for the emotional welfare of this child. It appears that the only absolute time that this unknown father was involved in this unfortunate child’s life was the moment of conception.
 

 This case does not involve a reasonable failure to care for T.B., but as defined by statute, the unknown father, by virtue of being totally absent, committed an “unreasonable failure ... to supply the child with necessary food, clothing, shelter, care, treatment, ... as a result of which the child’s physical, mental, or emotional health and safety [was] substantially threatened or impaired.” There are consequences that occur in the heat of the moment, and sometimes parenthood is one of those. Failure to adhere to the duties and obligations that follow is rarely reasonable, and here there appears to be no reasonable explanation as to why Marshall never assumed |shis role as a parent. Thus, we agree -with the State that Marshall’s complete and absolute absence from T.B.’s life amounts to neglect on Marshall’s part.
 

 Finally, at the hearing, after hearing all the evidence, the trial court correctly observed that the best interest of the child was the paramount concern in cases such as this. We note the trial court’s comments regarding Marshall:
 

 And as it pertains to Mr. Marshall, I am not going to dismiss any — any petition or pleadings. I think that he would have notice, he would be here, he would take an active interest here if he had been involved in the life of this child at any time. They would know where to find him. And so, that child is going to stay in the custody of the State pursuant to the recommendations in the previous hearing against the mother, Ms. Burks, with that goal of reunification until such time as Mr. Marshall does appear; does acknowledge paternity and then the same argument can be brought up. But while he is absentee and unknown and—
 
 *1036
 
 and just an alleged father, I’m not going to put that child in that — at that risk for him to get custody without knowing more.
 

 We agree with the trial court’s reasoning and find no abuse of discretion in this case. The assignment of error raised by this unknown father is without merit.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.